SAMUEL K. WILSON, appellant,

*v.*

TRENTON PASSENGER RAILWAY COMPANY (CONSOLIDATED), respondent.

[Filed June 21st, 1898.]

A corporation having contracted to purchase certain property for a certain amount of its stock, authorized its president to issue the stock and carry out the contract. The president, instead of doing this, purchased the property for cash.—*Held*, that the corporation could not, in a court of equity, recover the cash paid without offering to return the property or tendering the stock which it had contracted to give therefor, or showing that, through the conduct of the vendor, it had been precluded from doing so.

On appeal from a decree advised by Vice-Chancellor Emery, whose opinion is reported in *Trenton Passenger Railway Co.* v. *Wilson, 10 Dick. Ch. Rep. 273.*

Mr. *Samuel K. Robbins,* Mr. *David J. Pancoast* and Mr. *Samuel H. Grey,* for the appellant.

Mr. *Frank Bergen* and Mr. *James Buchanan,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

The transactions which led to the filing of the bill in this cause are stated with much particularity in the preface to the opinion of Vice-Chancellor Emery. For present purposes the following narration will suffice:

In 1891 Lewis Perrine, Jr., and Samuel K. Wilson, the defendant, were stockholders in the Trenton Horse Railroad Company, the Hamilton Township Street Railway Company and the South Clinton Avenue and Broad Street Railway Company, and in March of that year they contracted together to bring about the consolidation of those three companies and the City Railway Company into a new corporation, to be named the Trenton Passenger Railway Company, Consolidated. In pursuance of their contract, all the stock of the City Railway Company, consisting of nine hundred shares, was purchased and delivered to Wilson as security for $129,900, which he advanced to buy it. In September, 1891, the consolidation was effected by the joint agreement of the four constituent companies, acting under the statutes approved February 21st, 1888, and April 16th, 1891. *Gen. Stat. pp. 3225, 3229.* This agreement provided that the nine hundred shares of stock in the City Railway Company should be convertible into thirteen thousand two hundred and fifty-six shares of stock in the consolidated company, to be issued upon the surrender of the City company shares.

Upon the formation of the consolidated company Perrine was,

elected its president, and as such was expressly authorized, by resolution of September 28th, 1891, to take all such proceedings as might be proper or necessary to effect the exchange of stock provided for in the consolidation agreement and to carry out the same.

It may be assumed that the defendant had so participated in the making of the consolidation agreement that he was bound to surrender the City company stock on the terms therein stated, but instead of making the exchange thus contemplated, he and Perrine seem to have at once formed a different arrangement, for, on October 1st, 1891, Perrine delivered to the defendant only $14164/225$ shares of consolidated company stock (being the equivalent of one share of City company stock) and gave him, besides, the consolidated company's note for $130,000, which then represented the balance of the defendant's advances for the purchase of the City company stock, and for which he still retained that stock as security. The residue of the thirteen thousand two hundred and fifty-six shares of consolidated company stock, viz., $13.24161/225$ shares, Perrine caused to be registered in his own name.

These transactions indicate that, so far as the defendant and Perrine, acting for the consolidated company, could accomplish it, the plan of exchanging stock was abandoned, and in lieu thereof the consolidated company was to pay the defendant his advances, with interest, and receive the City company stock therefor, he to hold the stock as security for payment. The entries contemporaneously made in the books of the consolidated company accord with this understanding.

In January, 1892, Perrine delivered to the defendant two hundred and sixty $1,000 bonds of the consolidated company as collateral security for the same advances for which he held the City company stock, and, in May, 1892, substituted for these bonds the same amount in other bonds of the company. Subsequently, in the autumn of 1892, the defendant surrendered to Perrine, for the consolidated company, the nine hundred shares of City company stock, and Perrine turned them over to the consolidated company. It is beyond dispute that in making

50

this surrender the defendant relied upon the note and bonds of the consolidated company as his security, and that Perrine so understood the transaction.

On August 14th, 1893, a payment of cash was made to the defendant out of the funds of the consolidated company on account of his claim, and between that date and March 5th, 1894, he received from those funds $71,310.48.    The balance of the $130,000 and interest he received in August and September, 1894, from the proceeds of the sale of the bonds which Perrine had pledged to him as collateral, the residue of the proceeds going into the treasury of the company.

On these facts the consolidated company filed the present bill, setting up that although these payments of cash and pledge of its bonds were made by Perrine, its president, yet they were unauthorized, to the knowledge of the defendant, and praying that the defendant might be decreed to account for and return to the complainant all the moneys thus received by him.    The decree made thereon requires the defendant to repay, unconditionally, to the complainant $183,861.26, being the entire amount of his receipts, with interest, less some conceded credits.    From this decree the defendant appeals.

This decree seems to us inequitable.

The primary situation is not a very complicated one.    Perrine, the complainant's agent, authorized to purchase the City company stock from the defendant, and to give him therefor his principal's stock, chooses to make the purchase and give therefor his principal's cash.    Assuming that the principal is not bound to accede to the purchase thus made, what is its equitable remedy ?    Plainly, either it must restore the property purchased, or it must tender the stipulated price, its own stock, on demanding the return of its cash.    From performing one or the other of these alternatives it can be relieved only so far as it has become unable to perform through the action of the defendant.

It may be conceded that, although the complainant would be entitled to demand the return of its money on restoring the City company stock, yet it cannot be required to make such restoration, for it was entitled to receive, and the defendant was

bound to surrender, that stock on the delivery to him of the complainant's stock.   Consequently, although the City company stock is unquestionably within the power of the complainant, it is proper to ascertain what has been done with the shares of the complainant's stock.

As before stated, Perrine on October 1st, 1891, transferred $14164/_{225}$ shares to the defendant, and placed $13.24161/_{225}$ in his own name.   As Perrine was merely the agent of the complainant, the stock thus placed in his name remained the complainant's property.   On June 1st, 1894, Perrine transferred to the defendant $4,55161/_{225}$ shares, thus making four thousand five hundred and sixty-six shares which the defendant has received out of the thirteen thousand two hundred and fifty-six shares.   The rest of those shares were, on December 26th, 1894, sold by Perrine to the Trenton Traction Company for $24 a share, and upon that sale there is still due about $200,000.   If, as seems to be the case, Perrine never acquired from the complainant a valid title to that stock, the benefits of the sale belong in equity to the complainant.   Therefore, when on January 22d, 1895, the complainant instituted this suit, it might either have demanded from defendant the four thousand five hundred and sixty-six shares of stock held by him, and from Perrine and the Trenton Traction Company the price of eight thousand six hundred and ninety shares according to the terms of the sale above mentioned, or it might have affirmed the defendant's title to the stock standing' in his name and have tendered to him an assignment of its interest in the proceeds of the eight thousand six hundred and ninety shares sold, and thereupon have demanded from him the cash which he had received.   Evidently this latter alternative was an unprofitable one for the complainant.   It required the abandonment of the title to thirteen thousand two hundred and fifty-six shares of stock, worth apparently $24 a share, for a claim amounting to less than $170,000.   Neither alternative is within the scope of the bill of complaint.

The learned vice-chancellor who advised the decree below was not unmindful of the strength of the defendant's claim that the complainant, in taking from him what its agent had wrongfully

given him, should give him, so far as it could, what its agent ought to have given him; but he put aside that claim on the ground that the complainant had, by Perrine's action on October 1st, 1891, issued all the shares in accordance with the consolidation agreement, and thus had performed its obligation to the defendant.     But this ground is certainly untenable.     The resolution of September 28th, 1891, gave the control of the stock to Perrine as the complainant's agent, and after the registration on October 1st, 1891, the stock was in his control as completely as before, and neither the title nor the possession was at all changed thereby.     Such also seems to have been the understanding of Perrine, for he knew that on the issue of that stock the defendant was to surrender the City company stock, but he did not intimate that the surrender should then be made.     The notion that this registration constituted an issue of the stock to the defendant can rest only on the unsupported assumption that, in a transaction wherein Perrine was acting as agent for the complainant, and the defendant was acting for himself, with adverse interests, the defendant appointed Perrine as his agent also. The express evidence is to the contrary, the defendant denying any knowledge of the registration or issue referred to.

Our conclusion is that, before asking the aid of a court of equity in repudiation of the act of its agent by which it had obtained the City company stock, the complainant was bound to do what it reasonably could to secure to the defendant what he ought to have received therefor.     In such cases, even though the defendant has acted fraudulently, courts of equity apply the maxim " He who seeks equity must do equity," and will thus secure to the wrongdoer, in awarding its relief, whatever is justly and equitably his due.     *2 Pom. Eq. Jur.* § *910.*

. There are indications in the testimony that the complainant participated in Perrine's sale of the stock to the Trenton Traction Company to such a degree as may possibly preclude it from transferring to the defendant all that he ought to receive on repayment of the moneys demanded.     But, of course, this cannot be judicially determined without the presence of Perrine as a

party.  It is enough now to decide that, in the pending cause, the complainant has neither averred nor proved the doing of that without which it has no equitable right to the relief sought.

The decree should be reversed and the bill dismissed.

*For reversal*—Collins, Depue, Dixon, Garrison, Gummere, Lippincott, Ludlow, Van Syckel, Adams, Bogert, Hendrickson, Krueger, Nixon, Vredenburgh—14.

*For affirmance*—None.