This is a suit to compel the surrender and cancellation of certain bonds and notes issued by the township of Lodi, on the ground that the securities were affected with such illegality as to render them void.
All the securities for which this relief is sought are in the hands of defendant Little Ferry National Bank, to whom they were originally issued. The validity of certain other bonds and notes in connection with the same transaction was attacked in the bill, but is not now in question. Some have passed into other hands, and have been paid and the validity of certain others is now conceded.
The township of Lodi asserts numerous grounds for the invalidity of the securities. One is that the bonds were issued under an illegal agreement, whereby the township agreed for a certain period of time to cause deposits of money to be kept in the bank. The township also claims that there were irregularities and illegalities in the authorization of the bond issue. The bonds were paid for by the bank to the township at par and the proceeds were used for the construction of a sewer system within the township.
Almost all the notes now in question were likewise given for value and in connection with the construction of the sewerage system. There were certain other notes referred to in the complaint, the invalidity of which complainant does not now assert and also a small amount governed by other considerations. *Page 215 
When the bank subscribed for the bonds, it entered into an agreement which provided, in substance, that the township should cause to be deposited with the bank, the sum of two hundred thousand dollars ($200,000) by one of the departments of the State of New Jersey, and that the township should see to it that this deposit should not be withdrawn within three years, except that a part of said deposit might be withdrawn proportionately as the bank should call the bonds. This particular provision was not carried out. It is apparently illegal on the ground of public policy.
The question therefore is presented to the court as to whether such an illegal agreement so taints the entire transaction as to render the contract to repay the loan void and unenforceable. I do not consider that this is the result of this illegal provision.
The illegality which renders a contract void is one that goes to the main body of the agreement. If the substance of the agreement is legal, the tainted portion only, if severable from the rest of it, is unenforceable and the rest of the contract stands as valid. Here, the principal purpose of the contract was the borrowing, on the one hand, and the repayment on the other. It is to be noted that the provision for the deposit of state funds was solely for the benefit of the defendant, the lender, so that the excision of this provision would not benefit the bank. This is not a case in which the bank is seeking to enforce the illegal provision; in fact, as has been stated the provision was not carried out and the bank did not get the benefit of it. As a result, complainant was able to borrow the money from the bank, and the bank, to the extent of the loss of the profit on the agreed deposit, has received less than the consideration agreed.
Under such circumstances, the township now asks the court to deprive the bank of all right to the repayment of the money lent by it, of which the township has received a full benefit.
The principle as to the illegality of part of an agreement, that enforcement may be had as to the main elements, when they are valid, has been passed upon recently by the court of errors and appeals. Cameron v. International Alliance, c., 119 N.J. Eq. 577.
Here the court says (at p. 589): *Page 216 
"It is only where the full performance of a promise indivisible in terms would involve unreasonable restraint that the promise is illegal and not enforceable in any part. See Contracts, A.L.I. §518; Williston on Contracts §§ 1659, 1779. Where disregard of the illegal provision will not defeat the `primary purpose of the bargain,' the contract can be enforced, without the illegal provision, by a party thereto who is not guilty of `serious moral turpitude,' unless prohibited by statute. Contracts, A.L.I. §605."
There is another rule of equity applicable in this suit, which it seems to me, might well be dispositive of the entire matter. The principle applicable is that he who seeks equity must do equity. The township comes into court, as complainant, seeking the rescission and cancellation of bonds and notes executed by it. It is conceded that this complainant received full value for these securities. As a condition of cancellation of the obligation, principles of equity would seem to require that complainant restore the status quo, which would require the return of the consideration. Complainant has not done this nor made any tender thereof. Purely in this aspect of the case, it might well be that the township might have a defense to an action at law in a suit on the securities, but in the court of chancery, in a suit asking for the equitable remedy of rescission and cancellation, complainant cannot get all the benefit of a rescission without assuming any of the burdens thereof.
Wilson v. Trenton Passenger Railway Co., 56 N.J. Eq. 783.
Here, the court (at p. 788), says:
"Our conclusion is that, before asking the aid of a court of equity in repudiation of the act of its agent by which it had obtained the city company stock, the complainant was bound to do what it reasonably could to secure to the defendant what he ought to have received therefor. In such cases, even though the defendant has acted fraudulently, courts of equity apply the maxim `he who seeks equity must do equity,' and will thus assure to the wrongdoer, in awarding its relief, whatever is justly and equitably his due. 2 Pom. Eq. Jur. 910." Malague v. Marion,107 N.J. Eq. 333. *Page 217 
It further appears that for a period of several years, the township treated the bonds as valid, paid interest thereon, paid some of them and paid others by executing notes therefor.
All the bonds contained a recital by the township that all the acts, conditions and things required to exist or to be done preceding to or in issuance of this bond, had been performed. In the face of these facts and after long recognition of these bonds as valid, the township now attempts to show that the issuance of the bonds was illegal because of certain irregularities in connection with the authorization thereof and contends that they were issued in violation of legal restrictions upon the authority of the township to issue them.
The only securities, the validity of which has not been either conceded by the township on the hearing or determined by the foregoing considerations are certain gas main notes aggregating seven hundred forty-seven dollars and eighty-two cents ($747.82). These are attacked by the township on the ground that the proceeds were used to extend gas mains for the benefit of a private corporation in violation of the state constitution. By subdivision "i" of section 1 of the Home Rule act, a municipality may make a contract with a public utility corporation for the extension of water, gas and other such public utilities.
The industry of counsel has been unable to show that the constitutionality of this act has ever been passed upon by this court and it was not specifically raised by the pleadings in this suit, as is required. Woodbridge Township v. Middlesex WaterCo., 68 Atl. Rep. 464.
In addition, these particular notes contain a statement by the township certifying that all constitutional and other requirements to give validity to the notes have been met.
Under these circumstances, I cannot find that the notes are void.
The conclusion of the court that the bill must be dismissed on the grounds heretofore set forth, renders it unnecessary to pass upon the contentions of the township as to the effect of the irregularities asserted by it.
A decree dismissing the bill, will be advised. *Page 218